F. #2010R01518

**M 10 965**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

NOOR MOHAMMED,

        Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(15 U.S.C. §§ 78j(b) and 78ff)

EASTERN DISTRICT OF NEW YORK, SS:

      THOMAS MCGUIRE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      Upon information and belief, there is probable cause to believe that in or about and between April 2007 and September 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NOOR MOHAMMED did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit upon E*Trade Financial and Banc of America Investment Services, Inc. in connection with the purchases and sales of options in various companies, directly and indirectly, by use of the means and instrumentalities of interstate and foreign commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff).

The source of your deponent's information and the grounds for his belief are as follows:

I. Background

1. I have been a Special Agent with the FBI for approximately seven years. The facts set forth in this affidavit are based on my personal knowledge, as well as information obtained from the review of documents and statements made to me by witnesses with knowledge of the relevant facts. In the portions of this affidavit that describe the contents of documents or statements of witnesses, they are reported in substance and in part, unless otherwise indicated. Because I submit this affidavit for the limited purpose of establishing probable cause to arrest the defendant, I have not set forth all

facts known to me about this investigation and case.

2.  Since December 2009, the FBI has been conducting an investigation of a "free-riding" securities fraud scheme operated by the defendant NOOR MOHAMMED and others.  A "free-riding" securities fraud scheme involves a customer placing an order for securities for which they do not have sufficient funds to cover the purchase price.  As discussed in more detail below, the charged free-riding scheme involved (1) opening brokerage accounts at E*Trade Financial ("E*Trade") and Banc of America Investment Services, Inc. ("BOA Investment Services") in the names of the defendant and others to obtain option trading privileges; (2) depositing checks drawn in large amounts on accounts with insufficient funds into the brokerage accounts; and (3) immediately buying short-term stock options that expired within a day.  The scheme created a no-loss/win situation for MOHAMMED and his conspirators in that if the options lost value, the perpetrators walked away and left E*Trade and BOA Investment Services with a loss; if the options gained in value, the conspirators replaced the bad check with a good check and withdrew the trading profits.

II.  <u>The Defendant</u>

3.  The defendant NOOR MOHAMMED is a naturalized United States citizen who was born in Bangladesh.  During the

charged time period, MOHAMMED resided at a location known to the FBI in Deer Park, New York (the "Deer Park Address").

4.   On or about March 26, 2007, a registration for a corporation named Island Trading Enterprise Inc. was filed with the New York State Department of State, Division of Corporations. The mailing address of the corporation on file with the Department of State was the Deer Park Address, and the defendant NOOR MOHAMMED is listed as the individual to whom any legal process served on the Department of State should be sent. In addition, as discussed in more detail below, there was a HSBC Bank account used in furtherance of the scheme that was registered to MOHAMMED d/b/a Island Trading at the Deer Park Address.

5.   A check of public database records connected the defendant NOOR MOHAMMED to another company, Desh Development, Inc. According to these records, MOHAMMED is the owner and point of contact for this company. In addition, as discussed below, several checks were sent from a Chase Bank account registered to Desh Development (the "Desh Chase Account") in furtherance of the scheme. These checks were each signed "N. Mohammed." Proceeds from the securities fraud scheme were also deposited into the Desh Chase Account.

6.   On or about October 15, 2007, the defendant NOOR

MOHAMMED was arrested by the Suffolk County Police Department and charged with grand larceny in the 2d degree as a result of a $95,000 check that he wrote to BOA Investment Services from the Desh Chase Account that was subsequently returned for insufficient funds. On or about July 24, 2008, MOHAMMED was convicted upon plea of guilty of attempted grand larceny in the 3d degree and was sentenced to a conditional discharge.

III. Probable Cause to Arrest

    A. Fraudulent Check #1

    7. In or about January 2007, an E*Trade account was opened online with option trading privileges in the name of the defendant NOOR MOHAMMED. On the online account application, the mailing address was listed as the Deer Park Address and MOHAMMED's employer was listed as Island Trading at the Deer Park Address. MOHAMMED's annual net income was listed as $200,000+ and his total net worth was listed as $100,000-$499,999.

    8. On or about April 25, 2007, a check for $30,000 signed "N. Mohammed" and written on an HSBC account registered to the defendant NOOR MOHAMMED d/b/a Island Trading at the Deer Park Address was deposited into MOHAMMED's E*Trade account. At the time of deposit, the bank account on which this check was drawn had a balance of approximately $15,000.

    9. On or about April 26, 2007, 231 Broadcom call

option contracts[1] were purchased in the defendant NOOR MOHAMMED's E*Trade account at a price of $1.25 per share at a total cost of $29,058.24. Following this purchase, Broadcom call options declined in value, and these contracts were sold on April 27, 2007, at a price of $0.35 per share for a total of $7,901.63.

10. On or about April 27, 2007, a total of 563 Vishay International call option contracts were purchased in the defendant NOOR MOHAMMED's E*Trade account in several transactions at a price of $0.14-$0.15 per share at a total cost of $8,844.21. Following these purchases, Vishay International call options increased in value, and these contracts were sold on May 3, 2007, at a price of $0.20 per share for a total of $11,259.82.

11. On May 1, 2007, the $30,000 check was returned because a stop payment order had been put in at HSBC Bank. E*Trade was never made whole for the trading losses, and the defendant NOOR MOHAMMED's E*Trade account had a negative balance at the end of May 2007 of $18,872.49.

B.  Fraudulent Check #2

12. In or about April 2007, an E*Trade account was opened online with option trading privileges in the name of an

---

[1] An option contract provides the holder with the right to purchase 100 shares. Thus, an option contract that costs a $1.00 per share would cost $100 plus commission.

individual known to the FBI ("Individual #1"). On the online account application, Individual #1's employer was listed as Island Trading at the Deer Park Address.

13. On or about April 25, 2007, a check for $49,500 written on a Commerce Bank account registered to another individual known to the FBI ("Individual #2") was deposited into Individual #1's E*Trade account. At the time of deposit, the bank account on which this check was drawn had approximately $1,400.

14. On or about April 26, 2007, 400 Sandisk Corporation call option contracts were purchased in Individual #1's E*Trade account at a price of $1.20 per share at a total cost of $48,309.99. Following this purchase, Sandisk Corporation call options declined in value, and these contracts were sold on May 7, 2007, at a price of $0.05 per share for a total of $1,644.97.

15. On or about April 30, 2007, the $49,500 check was returned for insufficient funds. E*Trade was never made whole for the trading losses, and Individual #1's account had a negative balance at the end of May 2007 of $47,038.51.

16. The FBI interviewed Individual #2. During the interview, Individual #2 was shown the $49,500 check and stated, in substance, that he wrote and signed this check and gave it to

the defendant NOOR MOHAMMED. Individual #2 further stated, in substance, that MOHAMMED told him/her that he needed the money for some business, had the cash, but had forgotten his check book. Individual #2 further stated, in substance, that he did not have money in his checking account to cover this check and advised MOHAMMED of that fact. Individual #2 further stated, in substance, that MOHAMMED told him/her that he would put money in Individual #2's account to cover this check, but never did.

    C.   <u>Fraudulent Check #3</u>

    17. In or about April 2007, an E*Trade account was opened online in the name of an individual known to the FBI ("Individual #3"). On the online account application, Individual #3's employer was listed as Desh Development.

    18. On or about April 30, 2007, a check for $95,000 written on a Citibank account registered to Individual #3 was deposited into Individual #3's E*Trade account (the "First Check"). At the time of deposit, the bank account on which this check was drawn had approximately $300.

    19. On or about May 1, 2007, a total of 405 Mastercard call option contracts were purchased in Individual #3's E*Trade account at prices ranging from $2.10 to $2.35 per share at a total cost of $94,843.71. Following these purchases, Mastercard call options increased in value, and these contracts were sold at

8

a profit on May 2, 2007, at prices ranging from $7.70 to $8.30 per share for a total of $326,631.21.

20. On May 2, 2007, Individual #3 received an incoming wire for $96,000 to his/her Citibank account. On or about May 3, 2007, a check for $95,030 written on this Citibank account was deposited into Individual #3's E*Trade account (the "Second Check").

21. On May 7, 2007, the First Check was returned for insufficient funds.

22. From on or about May 8, 2007 to on or about May 11, 2007, approximately $318,000 was wire transferred out of Individual #3's E*Trade account. Of that amount, $248,000 was wire transferred to a Chase Bank account registered to an individual known to the FBI ("Individual #9") at the Deer Park Address. Within several days of these wire transfers, on May 16 and 17, 2007, a total of $150,000 was withdrawn from this Chase Bank account in cash. On May 17, 2007, a $75,000 Chase cashier's check was deposited into the Desh Chase Account. The name of the remitter on the check was Individual #9, and the back of this cashier's check was signed "N. Mohammed."

D. Fraudulent Check #4

23. In or about May 2007, an E*Trade account was opened online with option trading privileges in the name of the

9

defendant NOOR MOHAMMED's mother-in-law. On the online account application, the mailing address was listed as the Deer Park Address, and MOHAMMED's mother-in-law's employer was listed as Desh Development.

24. On or about May 22, 2007, a check for $90,000 written on a Chase Bank account registered to the defendant NOOR MOHAMMED's mother-in-law at the Deer Park Address was deposited into MOHAMMED's mother-in-law's E*Trade account. At the time of deposit, the bank account on which this check was drawn had approximately $50.

25. On or about May 22, 2007, a total of 691 Shanda International call option contracts were purchased in the defendant NOOR MOHAMMED's mother-in-law's E*Trade account at prices ranging from $1.25 to $1.35 per share at a total cost of $89,993.19. Following these purchases, Shanda International call options declined in value, and these contracts were sold on May 24, 2007, at prices ranging from $0.40 to $0.45 per share for a total of $29,316.31.

26. On or about May 24, 2007, a total of 206 Verigy Ltd. call option contracts were purchased in the defendant NOOR MOHAMMED's mother-in-law's E*Trade account at prices ranging from $1.30-$1.40 per share at a total cost of $28,834.48. Following these purchases, Verigy Ltd. call options increased in value, and

these contracts were sold on May 25, 2007, at prices ranging from $3.80 to $3.90 per share for a total of $78,494.33.

27. On or about May 25, 2007, a total of 410 Suntech Power call option contracts were purchased in the defendant NOOR MOHAMMED's mother-in-law's E*Trade account at prices ranging from $1.85-$1.95 per share at a total cost of $78,857.45. Following these purchases, Suntech Power call options declined in value, and these contracts were sold at a loss on May 29, 2007 and May 31, 2007, at prices ranging from of $0.70 to $1.05 per share for a total of $41,861.87.

28. On May 29, 2007, the $90,000 check was returned for insufficient funds. E*Trade was never made whole for the trading losses, and the defendant NOOR MOHAMMED's mother-in-law's E*Trade account had a negative balance at the end of May 2007 of $47,964.59.

E. Fraudulent Check #5

29. In or about January 2003, an E*Trade account was opened online in the name of an individual known to the FBI ("Individual #4"). On the online account application, Individual #4's employer was listed as Island Trading. In or about June 2007 at a time in which the account balance in this account was $0, an application for option trading privileges was made. On this application for option trading privileges, Individual #4's

11

employer was listed as Island Trading and his/her work address was listed as the Deer Park Address.

30. On or about June 14, 2007, a check for $75,000 written on a Commerce Bank account registered to another individual known to the FBI ("Individual #5") was deposited into Individual #4's E*Trade account. At the time of deposit, the bank account on which this check was drawn had approximately $10.

31. On or about June 14, 2007, a total of 1,140 Adobe Systems call option contracts were purchased in Individual #4's E*Trade account at a price of $0.65 per share at a total cost of $74,980.98.

32. On or about June 19, 2007, the $75,000 check was returned because a stop payment order was put on the check. The Adobe call option contracts expired on or about June 22, 2007, without being exercised rendering them without value. E*Trade was never made whole for the trading losses, and Individual #4's account had a negative balance at the end of June 2007 of $75,115.18.

F. Fraudulent Checks #6 and 7

33. In or about July 2007, an E*Trade account was opened online in the name of another individual known to the FBI ("Individual #6").

34. On or about July 16, 2007, a check for $99,000

12

signed "N. Mohammed" and written on the Desh Chase Account was deposited into Individual #6's E*Trade account. On or about July 17, 2007, a check for $99,000 signed "N. Mohammed" and written on the Desh Chase Account was deposited into Individual #6's E*Trade account. At the time of these deposits, the bank account on which these checks were drawn had less than $1,000.

35. On or about July 17, 2007, a total of 1440 Merrill Lynch call option contracts were purchased in Individual #6's E*Trade account at prices ranging from $0.45 to $0.70 per share at a total cost of $98,054.95.

36. On or about May 24, 2007, a total of 1,331 Yahoo Inc. call option contracts were purchased in Individual #6's E*Trade account at prices ranging from $0.75-$0.80 per share at a total cost of $98,354.72.

37. On or about July 20, 2007 and July 23, 2007, both of the $99,000 checks were returned for insufficient funds. The Merrill Lynch and Yahoo Inc. call option contracts expired on or about July 24, 2007, without being exercised rendering them without value. E*Trade was never made whole for the trading losses, and Individual #6's account had a negative balance at the end of July 2007 of $197,956.97.

38. At the time of the defendant NOOR MOHAMMED's arrest on October 15, 2007, several documents were seized from

his person. These documents included copies of Individual #6's driver's license and social security card, and documents with handwritten notes, including notes relating to "annual income," "liquid net" and "total net" that match the annual income, liquid net worth and total net worth numbers on Individual #6's E*Trade application, and a note setting forth an E*Trade account number that matches the account number on Individual #6's account.

39. In addition, the FBI received information from E*Trade concerning the deposit of the two NSF checks. According to E*Trade, a customer walked into a Garden City E*Trade branch on July 16, 2007 and July 17, 2007, and deposited the two checks. E*Trade conducts photographic surveillance at that branch and provided photographs of the individuals suspected to have made the fraudulent deposits. The defendant NOOR MOHAMMED is one of the individuals depicted in the photographs sent by E*Trade.

G.    Fraudulent Check #8

40. In or about July 2007, an E*Trade account was opened online with option trading privileges in the name of an individual known to the FBI ("Individual #7").

41. On or about July 24, 2007, a check for $150,000 written on a Citibank account registered to the defendant NOOR MOHAMMED's wife at the Deer Park Address was deposited into Individual #7's E*Trade account. At the time of deposit, the

bank account on which this check was drawn had approximately $45.

42. On or about July 24, 2007, a total of 467 Nutrisystem call option contracts were purchased in Individual #7's E*Trade account at prices ranging from $1.25 to $1.65 per share at a total cost of $76,155.21. Following these purchases, Nutrisystem call options declined in value. Six of these contracts were sold at a loss on July 25, 2007, at a price of $0.10 per share for a total of $45.50. The remainder of these contracts expired on or about August 18, 2007, without being exercised rendering them without value.

43. On or about July 24, 2007, a total of 481 Nutrisystem put option contracts were purchased in Individual #7's E*Trade account at prices ranging from $1.40 to $1.65 per share at a total cost of $73,765.71. Following these purchases, the contracts increased in value and were sold on June 25, 2007, at prices ranging from $1.60 to $1.80 per share for a total of $84,557.96.

44. On or about July 25, 2007, a total of 488 Akamai Technologies call option contracts were purchased in Individual #7's E*Trade account at prices ranging from $1.65 to $1.80 per share at a total cost of $84,355.98. These contracts expired on or about August 18, 2007, without being exercised rendering them without value.

45. On or about July 31, 2007, the $150,000 check was returned for insufficient funds. E*Trade was never made whole for the trading losses, and Individual #7's account had a negative balance at the end of August 2007 of $144,953.44.

### H. Fraudulent Check #9

46. In or about July 2007, an E*Trade account was opened online with option trading privileges in the name of the defendant NOOR MOHAMMED's wife. On the online account application, the mailing address was listed as the Deer Park Address.

47. On or about July 31, 2007, a check for $85,000 signed by "N. Mohammed" and written on an HSBC account registered to NOOR MOHAMMED d/b/a Island Trading at the Deer Park Address was deposited into MOHAMMED's wife's E*Trade account. At the time of deposit, the bank account on which this check was drawn had approximately $85.

48. On or about August 6, 2007, the $85,000 check was returned. No trading occurred in this account.

### I. Fraudulent Checks #10 and 11

49. In or about July 2007, a BOA Investment Services account was opened online with option trading privileges in the name of the defendant NOOR MOHAMMED. On the online account application, the mailing address was listed as the Deer Park

Address.

50. On or about September 18, 2007, a check for $95,000 written on the Desh Chase Account and signed "N. Mohammed" was deposited into the defendant NOOR MOHAMMED's BOA Investment Services account. At the time of deposit, the bank account on which this check was drawn had a balance of less than $2,000.

51. On or about September 20, 2007, a total of 367 Apple Inc. call option contracts were purchased in the defendant NOOR MOHAMMED's BOA Investment Services account at prices ranging from $1.70 to $2.65 per share at a total cost of $78,875.25. Following these purchases, these call options declined in value, and these contracts were sold on September 21, 2007, at prices ranging from $1.40 to $1.80 per share for a total of $56,858.82.

52. On or about September 21, 2007, a total of 990 Bear Stearns Company Inc. call option contracts were purchased in the defendant NOOR MOHAMMED's BOA Investment Services account at prices ranging from $0.65 to $0.90 per share at a total cost of $77,914.50. Following these purchases, these call options declined in value. 337 of these contracts were sold on September 24, 2007, at a price of $0.05 per share for a total of $1,014.55 and the remainder of these contracts expired on or about September 24, 2007, without being exercised rendering them

without value.

53. On or about September 24, the $95,000 check was returned for insufficient funds.[2]

54. On or about September 28, 2007, a check for $190,000 written on an account registered to another individual known to the FBI ("Individual #8") at Chase Bank was deposited into the defendant NOOR MOHAMMED's BOA Investment Services account. That same day, this check was returned for insufficient funds.

55. BOA Investment Services was never made whole for the trading losses, and the defendant NOOR MOHAMMED's BOA Investment Services account had a negative balance at the end of October 2007 of $99,057.51.

\* \* \* \*

56. Based on the transactions discussed in this complaint, the defendant and his coconspirators caused more than $600,000 in total net losses to E*Trade and BOA Investment Services.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant NOOR MOHAMMED

---

[2] This check led to the defendant NOOR MOHAMMED's arrest by the Suffolk County Police Department on or about October 15, 2007.

so that he may be dealt with according to law.  Your deponent also requests that this affidavit and the arrest warrant for the defendant be sealed, except that the FBI may disclose this affidavit and the arrest warrant as necessary to effectuate the arrest and arraignment of the defendant.

                                  THOMAS McGUIRE
                                  Special Agent
                                  Federal Bureau of Investigation